IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 16, 2019

## CORTNEY R. LOGAN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-C-2822    Seth W. Norman, Judge**

_____

## No. M2018-01786-CCA-R3-PC

_____

Petitioner, Cortney R. Logan, was convicted by a Davidson County jury of attempted first degree murder and employing a firearm during the flight or escape from the attempt to commit a dangerous felony. Petitioner received consecutive sentences of 25 years and 6 years for a total effective sentence of 31 years. Petitioner's convictions and sentences were affirmed on direct appeal. Petitioner sought post-conviction relief, alleging that his trial counsel was ineffective. Following an evidentiary hearing, the post-conviction court denied post-conviction relief. Having reviewed the record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Jay Umerley, Nashville, Tennessee (on appeal) and Elaine Heard Cuthbertson, Nashville, Tennessee (at trial) for the appellant, Cortney R. Logan.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Dan H. Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Trial*

The facts underlying Petitioner's conviction were summarized by a panel of this court on direct appeal. *See State v. Cortney R. Logan*, No. M2014-01687-CCA-R3-CD, 2015 WL 5883187, at *1-6 (Tenn. Crim. App. Oct. 8, 2015), *perm. app. denied* (Tenn.

Feb. 18, 2016). On June 25, 2009, Petitioner helped his co-defendant, Joseph Leon Jackson, Jr. (hereinafter "Jackson"), escape from the custody of the CCA Delta Correctional Institution in Greenwood, Mississippi. That same day, Sergeant Mark Chestnut, an officer with the Metropolitan Nashville Police Department, initiated a traffic stop of Petitioner on Interstate 40 in Nashville for a seatbelt violation. During the encounter, Sergeant Chestnut was shot four times by Jackson using a revolver that had been stolen from one of the correctional officers during the escape. *Id*.

### *Post-conviction hearing*

Petitioner testified at the evidentiary hearing that his court-appointed counsel told him to "file a post-conviction motion" when Petitioner "got to prison," and that trial counsel "would admit that he didn't do his job." Petitioner testified that trial counsel should have challenged the traffic stop for lack of probable cause. He testified that the traffic stop was illegal because he was wearing his seatbelt. Petitioner testified that trial counsel should have requested a change of venue. Petitioner testified that he believed "there was no way [he] could have . . . receive[d] a fair trial" in Davidson County, where the victim was a police officer.

Petitioner testified that he would have testified at trial but for trial counsel's failure to inform him that he had already been indicted in Mississippi. Petitioner testified that he chose not to testify based on trial counsel's advice that if he testified at his trial in Tennessee, his testimony "would have been used against [him] to obtain an indictment" in Mississippi. If he had testified at trial, Petitioner would have testified that he was under duress and, therefore, could not have been criminally responsible for the shooting of Sergeant Chestnut. Petitioner acknowledged that he had helped Jackson escape from prison. He testified that he did not know Jackson had a gun. Petitioner testified that he "had no choice" but to flee the scene because Sergeant Chestnut pulled his gun after Jackson shot him.

Trial counsel testified that he could not recall how many times he met with Petitioner, but his notes indicated that he had "at least eight meetings with [Petitioner]" in jail. Trial counsel recalled that co-defendant Jackson pleaded guilty to the charges shortly before Petitioner's trial began. Jackson received a longer sentence than Petitioner. Jackson did not testify at Petitioner's trial. Trial counsel testified that both Petitioner and Jackson had given statements to police following their arrests. Trial counsel testified that Jackson stated that after the shooting, he told Petitioner "to get in the car and drive or [he would] shoot [Petitioner]." Trial counsel testified, however, that he did not "know how [Jackson's testimony] could have helped [Petitioner], other than if he had stuck with his story."

Trial counsel testified that he filed a motion to exclude evidence of Petitioner's crimes in Mississippi under Tennessee Rule of Evidence 404(b), and the trial court denied his motion. Trial counsel advised Petitioner of his right to testify in his defense. He testified that he sent a letter to Petitioner advising Petitioner of the potential charges against him in Mississippi. Trial counsel testified that Petitioner "was facing potential life sentences in the state of Mississippi, more time than he was facing [in Tennessee]." Trial counsel advised Petitioner that his testimony in this case could be used against him in a trial on his charges in Mississippi. Trial counsel testified, "[s]o we did have that discussion, and he decided not to [ ] testify. And that would have been my advice, at that point, not to have gotten on the stand."

Regarding a change of venue, trial counsel testified, "I don't know if a change of venue would have helped, I did investigate that. I did collect media reports here." He testified that he discussed the issue with Jackson's trial counsel and other attorneys more experienced with cases involving requesting a change of venue. He testified, "the consensus was that [ ] we were likely going to get a jury from an even more conservative part of the state" if venue was changed. Trial counsel testified that in hindsight, knowing Defendant would be convicted as charged, he would have had nothing to lose by requesting a change of venue. Trial counsel testified that "[t]here was a large amount of media coverage" about the shooting. He testified that he questioned potential jurors about whether they had seen media coverage and whether they had formed an opinion. Trial counsel also filed a motion to prohibit the jury from watching news or social media during the trial. He testified that the media coverage "had kind of died off" by the time Petitioner's trial began.

Trial counsel testified that he had discussions with Petitioner about filing a motion to suppress. Petitioner stated that the stop was improper because his windows were too dark for Sergeant Chestnut to have seen whether Petitioner was wearing his seatbelt. Trial counsel testified, "I'm not sure what a suppression motion would have suppressed." Trial counsel stated that there was dashcam video evidence of the shooting, and any items of evidence that might have been excluded based on an illegal stop were not discovered until after Sergeant Chestnut had been shot and Petitioner and Jackson had driven away.

Trial counsel did not recall that Petitioner wanted to assert the defense of duress. Trial counsel testified that Jackson made a statement to the police that he told Petitioner after the shooting, "let's go or I'm going to shoot you." Trial counsel testified that was the only evidence of duress, "but that was after the escape and after the shooting." Trial counsel testified that he did not recall Petitioner "ever mentioning that there was any duress" concerning Petitioner's going to Mississippi, the criminal acts committed in Mississippi, or driving Jackson through Tennessee.

*Analysis*

On appeal, Petitioner's only claim of ineffective assistance of counsel is trial counsel's failure to make a motion for a change of venue. Accordingly, all other claims that were raised in Petitioner's post-conviction petition and asserted by Petitioner at the post-conviction hearing are waived. Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure states that the argument section of an appellant's brief shall contain: "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on[.]" Tenn. R. App. P. 27(a)(7)(A)-(B). "An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). Moreover, Rule 10(b) of the Rules of the Court of Criminal Appeals states, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this Court." Tenn. Ct. Crim. App. R. 10(b).

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need

not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). This court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578). This court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Id*. at 456. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Id*. However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Id*. at 458.

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). "[A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

The post-conviction court ruled that trial counsel's performance was not deficient. The post-conviction court accredited trial counsel's testimony and concluded that trial counsel's decision not to seek a change of venue was a reasonably based strategic decision based on adequate preparation and investigation. The evidence does not preponderate against the post-conviction court's findings. Trial counsel testified that he considered a motion to change venue because there was a "large amount of media coverage" about the shooting. He consulted with Petitioner's co-defendant's counsel and other attorneys experienced in cases involving a change of venue. Based on his research and the facts of Petitioner's case, trial counsel believed that Petitioner's risk of conviction could have been greater if the case was tried before a more conservative jury than in

Davidson County. Trial counsel also testified that the media coverage had "died off" by the time Petitioner's trial began. Trial counsel testified that he questioned potential jurors during voir dire about their familiarity with the facts of the case. He also filed a motion to prohibit the jury from watching news or social media during the trial. We conclude that Petitioner has failed to show that trial counsel's performance was deficient, and we need not address whether Petitioner was prejudiced by the alleged deficiency. *See Goad*, 938 S.W.2d at 370.

Petitioner also argues on appeal that the post-conviction court erred by relying on a decision of the Eighth Circuit Court of Appeals in determining that trial counsel was not ineffective for failing to request a change of venue in Petitioner's case. In its written order denying post-conviction relief, the post-conviction court found that trial counsel's "decision not to move for a change of venue was a strategic choice and there is no proof or argument that there would be a more neutral venue for the attempted murder of a law enforcement officer." Citing *Robinson v. U.S.*, 448 F.2d 1255, 1256 (8th Cir. 1971), the post-conviction court stated that it would "not second-guess a logical strategic decision simply because the petitioner was ultimately convicted." Petitioner argues that the post-conviction court "misapplied the law to the facts" by citing a case that is not controlling. Petitioner argues that his case should therefore be remanded for a new evidentiary hearing. We disagree.

While it is true that neither this court nor the post-conviction court is bound by the decisions of the Eighth Circuit, it is well-settled law in Tennessee that this court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Burns*, 6 S.W.3d at 462 (Tenn. 1999). This court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). This deference to the tactical decisions of trial counsel is dependent, however, upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Petitioner even acknowledges in his brief that our supreme court in *Hellard*, cited *Robinson* as persuasive authority and quoted the same part of the *Robinson* decision that was quoted by the post-conviction court in its order:

> Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used. Trial counsel's strategy will vary even among the most skilled lawyers. When that judgment

- 6 -

exercised turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel. *Robinson v. United States*, 448 F.2d 1255 at 1256 (8th Cir. 1971).

*Hellard*, 629 S.W.2d at 9.

Petitioner does not cite any authority, persuasive or binding, to support his argument that the post-conviction court's reliance on *Robinson* entitles him to a new evidentiary hearing. The holding in *Robinson* is consistent with our established case law. The post-conviction court did not err by citing that case for the principle that trial counsel's decisions should not be reviewed with the benefit of hindsight. Petitioner is not entitled to relief.

## CONCLUSION

Following our review of the record and the briefs of the parties, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE